Anna M. Pine, Administratrix of the Estate of Edward S. Pine, Deceased *v.* Joseph P. Synkonis, Jr., et al. Joseph P Synkonis, Jr, Harold Humbert, Joseph Brocco, Richard Brocco, William Hughes and Clark E. Whitesell, Appellants.

Argued December 16, 1982, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*Joseph Goldberg,* with him *Edwin L. Scherlis* and *Herbert L. Olivieri, Margolis, Edelstein & Scherlis,* for appellants.

*Donald E. Matusow,* with him *Ronald L. Wolf, Litvin, Blumberg, Matusow & Young,* for appellee.

OPINION BY JUDGE DOYLE, January 11, 1984:

This litigation arose out of a motor vehicle accident on June 16, 1974, in which a vehicle traveling north through the 26th Street underpass of the Schuylkill Expressway in Philadelphia crossed through a missing section of medial barrier and struck a United taxicab being driven south by Edward S. Pine. Pine died two days after the accident and was survived by a wife and child.

Anna M. Pine, administratrix of the estate of her deceased husband, brought an action in trespass against Joseph P. Synkonis, Jr., Harold Humbert, Clark E. Whitesell, Joseph Brocco, Williams Hughes, and Richard Brocco in the Court of Common Pleas of Philadelphia. The defendants, appellants before this Court, were all employees of the Commonwealth Department of Transportation (Department).[1] The City of Philadelphia was also named as a defendant. A bifurcated trial was held before the Honorable CHARLES A. LORD and the jury returned a verdict against the six individual defendants and in favor of the City of Philadelphia. Damages were assessed at $642,375.[2] Delay damages of $26,413.52 were added. Following argument before a court en banc, defendants' motions

---

[1] Prior to trial, Richard Brocco passed away. Following the trial but prior to appeal, William Hughes also died. The record indicates that substitution of a personal representative has been made for Hughes but not for Richard Brocco.

[2] Damages were assessed at $17,354 for the survival action and $625,021 for the wrongful death action.

for a new trial and/or judgment n.o.v. were denied. Judgment was entered and this appeal followed.

Evidence adduced at the trial indicated that at the time of the fatal accident there was a gap in the medial guardrail barrier in the 26th Street underpass which extended at least eighty feet. Other evidence indicated that all the defendants were aware of the high risk of accident generally present in the underpass and all admitted that the missing medial guardrail in this location would create a hazardous condition for motorists. There was also evidence that damaged or missing guardrail had been left unrepaired for an extended period of time.[3]

## Qualified Immunity

Initially we must determine whether the Appellants are protected by the qualified immunity announced by the Supreme Court in *DuBree v. Commonwealth of Pennsylvania*, 481 Pa. 540, 393 A.2d 293 (1978). In *DuBree,* the Court[4] analyzed prior law governing official immunity and established considerations for determining whether an official should be immune. These can be summarized as follows:

1. Can the official be held to a predictable standard of care, which can be defined and applied with relative ease.

2. Do the official's decisions or actions have a significant impact on the public or impact on a large portion of the public. The

---

[3] This evidence indicated that as far back as 1971 a gap of some twelve feet existed in the guardrail. In May of 1973 an accident occurred in which a vehicle struck the jagged edge of the guardrail and it penetrated the car, killing the driver and a child in the rear; to extricate the vehicle, additional guardrail was removed. Other evidence indicated that there were no repairs to the missing guardrail between that time and the June 1974 Pine accident.

[4] Per ROBERTS, J., with two Justices concurring and two Justices concurring in part.

greater the impact of such decision making, the greater the need to isolate the official from the threat of liability.

3. Did the official himself engage in actionable conduct. Officials will not be held liable for the acts of those under them simply because they are in the chain of command.

4. But for a defendant's status as an official, would an action in negligence lie. Plaintiff must establish a duty, breach of that duty, causation and injury.

5. Would any public policy be promoted in shielding the official from liability.

6. Has the plaintiff failed to pursue other available remedies.

Appellants urge that they are protected under *DuBree* and rely on the Superior Court's application of the *DuBree* considerations in *Lehnig v. Felton,* 278 Pa. Superior Ct. 12, 419 A.2d 1330 (1980) *(Lehnig II)*. In *Lehnig v. Felton,* 235 Pa. Superior Ct. 100, 340 A.2d 564 (1975) *(Lehnig I), remanded* 481 Pa. 557, 393 A.2d 302 (1978), the Superior Court affirmed an entry of summary judgment in favor of Department of Transportation officials in an action arising from the death of a truck driver whose truck went out of control after hitting a pothole. On appeal, however, the Supreme Court remanded the case for reconsideration in light of *DuBree.* On remand, entry of summary judgment in the officials' favor was again affirmed. The Superior Court found that there were no allegations of direct conduct on the part of the officials nor of responsibility for the repair of the conditions which caused the accident. Echoing *DuBree,* the Court opined that the officials could not be held liable simply because they were in the "chain of command." 278 Pa. Superior Ct. at 15, 419 A.2d at 1332. The Court also noted:

[A]t a time when those responsible for the maintenance of state highways have been in a position where important economic decisions had to be made as to what areas needing repairs should and had to have priority, it is of utmost importance that they be able to engage in unfettered decision making.

*Id.*

We can agree that, as a matter of general policy, Department officials should be able to engage in unfettered decision making in those matters which require exercise of their discretion,[5] but we find *Lehnig II* distinguishable. Unlike *Lehnig II,* the case before this Court includes considerable allegations and attempts to prove both responsibility for repair of the missing guardrail and negligence in the carrying out of those official duties to repair. Appellee, plaintiff below, charged each defendant with a direct breach of a duty to inspect and order the repair of a known hazardous road condition, and did not rely on the "chain of command" to affix liability. We must, therefore, look beyond the example of *Lehnig II* and ourselves apply the *DuBree* considerations to the Appellants in this case.[6]

Our analysis must necessarily proceed from an examination of the position and duties of each of the Appellants.

---

[5] The Courts of other states distinguish between governmental or discretionary acts and ministerial acts and extend immunity for discretionary activity but not in negligence in performance of ministerial duties. *See e.g., James v. Prince George's County,* 288 Md. 315, 418 A.2d 1173 (1980) ; *Weiler v. Town of Osceola,* 51 Misc. 2d 163, 273 N.Y.S.2d 90, 1966) ; *aff'd.* 29 A.D.2d 737, 287 N.Y.S.2d 365 (1968) ; *accord Tcherepnin v. Franz,* 570 F.2d 187 (7th Cir. 1978), *cert. denied, First National Bank & Trust Co. in Alton v. Berke,* 439 U.S. 876 (1978).

[6] No question is raised in the instant appeal with regard to failure to pursue other available remedies.

Joseph P. Synkonis, Jr., was a Highway District Engineer I. It was his duty to generally oversee 4500 miles of highway in the Bucks, Chester, Delaware, Montgomery and Philadelphia five-county area. He acknowledged that he was aware that the 26th Street underpass represented a dangerous condition but testified that he was not personally aware that guard-rail was missing. The record offers no evidence indicating that he was personally aware of the specific hazard which resulted in this accident. The trial court notes that he was provided with a car and car phone by the Department but his job description indicated that repair work was reviewed by him "through the occasional inspection of results obtained and through the analysis of proposed programs by professional and administrative superiors." Surely, the considerations announced in *DuBree* and the policy articulated in *Lehnig II* dictate that an official at this high level of decision making be immune from threats of liability in the performance of such broad-ranging responsibilities. We find no way to articulate a standard of care for such officials which would adequately predict in what circumstances liability should attach. In addition, we do not find a duty in officials at this level to personally inspect or to otherwise identify specific repair needs. Notwithstanding the provision of a car and car phone, it was clearly not Synkonis' job to continuously ride the 4500 miles of road under his supervision to discover maintenance problems. Nor do we find responsibility at this level to personally see that specific repairs are completed, even should the official actually become aware of the need. Maintenance decisions at this level are made in the context of regionwide (district) manpower, equipment and financial considerations. Synkonis cannot be held liable simply because of his position at the top of the "chain of command."

Similarly, we find Harold H. Humbert to enjoy qualified immunity under *DuBree*. His job description indicated the same review duties as those of Synkonis. Humbert acknowledged that part of his duties involved maintenance of the roads in the five-county area, but testified that he was not personally aware of the 26th Street underpass problem. There was no evidence to the contrary. Here again the official responsibilities were broad-ranging and we believe public policy dictates that officials at this level be free from the cloud of potential liability. The broad discretion exercised at the regional level makes it impossible to establish a predictable standard of care. We also find no duty to inspect or see that specific repairs are completed. Humbert also cannot be found liable simply because of his position in the "chain of command."

Clark Whitesell was the District Maintenance Engineer for the five-county area. His duties included supervision of routine maintenance through superintendents and periodic inspection, and the record indicates that he had received reports of accidents in the 26th Street underpass which damaged the median guardrail. Again, however, because of the broad range of his supervisory duties, we are unable to articulate a standard of care and we believe public policy is best served if the maintenance official at this level is free to exercise his judgment and establish repair priorities unfettered by a threat of suit. In addition, we find no duty at the regional (district) level to personally see that repairs are made.

Joseph Brocco was the Department Superintendent for Philadelphia County and was responsible for knowing the conditions of the 360-400 miles of roadway under his supervision. In the record he admitted responsibility to ride the roads to discover maintenance problems and admitted knowing of a number of accidents in the 26th Street underpass. While the re-

sponsibilities of a county superintendent are broad, we have no difficulty defining a standard of care to which an official at this level should be held. While we would not hold a county superintendent liable for failure to repair *every* pothole or road defect within the scope of his supervision, a county superintendent can easily be held responsible for failure to order correction within a reasonable length of time of a known or knowable condition which poses a serious hazard to the safety of motorists. We believe also that rather than shield the superintendent from liability, public policy would favor imposing liability on those whose duty it is to identify road hazards and order them corrected. We do not believe the principles articulated in *DuBree* extend qualified immunity to Joseph Brocco in carrying out this duty. The record indicates that Brocco enjoyed limited discretion in the correction of such patently dangerous conditions, and there was ample evidence in the record regarding notice of the missing guardrail and the length of time the hazard went uncorrected for the jury to conclude that Brocco breached his duty to the public safety.[7]

William Hughes, Principal Assistant Superintendent for Philadelphia County, is similarly situated. He was responsible for distribution of police reports of road maintenance problems and was required to make periodic inspections of highway conditions. The record indicates that he was the Department contact to whom the Philadelphia Police directed reports of road maintenance problems and that he was contacted regarding the missing guardrail in the underpass. Like Brocco, Hughes is not shielded by qualified immunity in his failure to take reasonable steps in a timely manner to correct a known and dangerous road hazard. Public policy favors that officials whose job

---

[7] *See supra* note 3.

it is to identify and direct the repair of seriously unsafe roads be held accountable in the performance of their duties.

The record indicates that Richard Brocco, Assistant County Superintendent for Philadelphia County, was located in the South Philadelphia satellite office and was directly responsible for guardrail repairs at the 26th Street underpass. He, as well, is not shielded by immunity, but can easily be held accountable for failure to timely act to correct a known dangerous road condition. There is ample record evidence from which a jury could conclude that Brocco was negligent in the performance of his duties.

### Evidentiary Error

Appellants also allege error in the admission of evidence of the earnings of taxi drivers employed by the Yellow Cab Company. Appellants argue that as the decedent was an owner-operator, not an employee of a taxi company, the evidence was not relevant and was therefore inadmissible. It is further urged that admission of the evidence was prejudicial and it was error to allow the jury to consider it. The argument is without merit.

It is the law in Pennsylvania that the measure of damages in a wrongful death action is to be based on the best available evidence even though such evidence does not constitute precise proof. *Smail v. Flock*, 407 Pa. 148, 180 A.2d 59 (1962). Appellants argue that the "best available evidence" was *only* the sparse record of decedent's brief earning history as a United taxicab operator. We disagree. Our Supreme Court has recognized the inherently speculative nature of calculations of lost future earnings and urged that "that alone does not justify excluding reliable economic evidence. . . ." *Kaczkowski v. Bolubasz*, 491 Pa. 561, 574, 421 A.2d 1027, 1033-34 (1980). The record

discloses that the gross earnings of the Yellow Cab drivers were sufficiently similar to the projections which could have been made from the sparse information of the decedent's actual earnings[8] to provide useful and reliable evidence for consideration by the jury.

In addition, we note that the evidence here contested was submitted to the jury with full instruction by the trial judge regarding its value and limitations in aiding their assessment of damages. We consequently find no error or prejudice in its submission to the jury.

## Limitation of Damages

Appellants finally argue that Section 2 of Act 152 of 1978, formerly 42 Pa. C. S. §5111,[9] limited recovery in this action to $250,000. We do not agree. The statutory language in effect at the time of the jury's verdict in this case provided, in pertinent part:

(a) Amount recoverable.—No verdict or verdicts *against the Commonwealth* on actions brought pursuant to Section 5110 (relating to limited waiver of sovereign immunity) arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall exceed $250,-000 in favor of any plaintiff or $1,000,000 in the aggregate. (Emphasis added.)

---

[8] Appellants contend that the evidence regarding decedent's actual earnings project to only about $7,000 a year, considerably less than the $15,300 a year figure offered for Yellow Cab drivers. Appellants, however, incorrectly exclude from their projection contributions from decedent's gross income toward the investment in his business. These contributions represent an accumulation of capital which Yellow Cab drivers do not enjoy. If not excluded, these investments raise decedent's projected income to approximately $16,300 per year, a figure exceeding that of Yellow Cab drivers.

[9] Section 5111 was repealed by Section 221(g) of the Act of October 5, 1980 P.L. 693. Similar provisions are now found at 42 Pa. C. S. §8528.

formerly 42 Pa. C. S. §5111. This language limiting the amount of recovery was applicable *only to the Commonwealth*. Nothing in Act 152 limited verdicts against *Commonwealth employees*.

Appellants urge us, however, to examine the language now found in Subchapter B of Chapter 85 of the Judicial Code.[10] That Subchapter is entitled "Actions Against Commonwealth Parties" and provides verdict limitations similar to those provided in Act 152. It extends the limitations to all "[a]ctions for which damages are limited by reference to this subchapter."[11] Chapter 85 defines a "Commonwealth party" to include Commonwealth employees acting within the scope of their employment.[12] We do not disagree that this language, enacted *after* the jury verdict in the instant case, expresses the legislature's clear intent to limit recovery against Department officials and other Commonwealth employees. We find no cause, however, to apply this language to the circumstances before us. A statute which is not by its terms made retroactive should not be so construed. *Farmers National Bank & Trust Co. of Reading v. Berks County Real Estate Co.*, 333 Pa. 390, 5 A.2d 94 (1939); *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corp.*, 54 Pa. Commonwealth Ct. 376, 421 A.2d 521 (1980). We note also that in *Gibson v. Commonwealth*, 490 Pa. 156, 415 A.2d 80 (1980) the Supreme Court expressly refused to apply Act 152 retroactively and we will similarly give no retroactive effect to its successor. In addition, we impute no legislative intent from the subsequent enactment to limit recovery against employees under Act 152.

---

[10] 42 Pa. C. S. §§8521-28.

[11] 42 Pa. C. S. §8528(b).

[12] 42 Pa. C. S. §8501.

## Conclusion

In accordance with the foregoing, the denial of the motion for judgment *non obstante veredicto* with regard to defendants Synkonis, Humbert and Whitesell was error of law. We find no error, however, in the entry of judgment against defendants Joseph Brocco, William Hughes and Richard Brocco. Additionally, we find no error in the admission of evidence during trial and affirm the court's denial of defendants' motion for new trial. Finally, we hold the statutory verdict limitations found in 42 Pa. C. S. §8528 to be inapplicable and affirm the court's denial of defendants' motion to mold the verdict.

### ORDER

Now, January 11, 1984, the Order of the Court of Common Pleas of Philadelphia County in the above referenced matter, dated February 20, 1981, is reversed in part and affirmed in part. The judgment entered by the Court of Common Pleas on February 19, 1982 is hereby vacated and the matter remanded for entry of judgment consistent with this opinion. Jurisdiction is relinquished.