645 A.2d 1370

The MASON & DIXON LINES, INC.

v.

Larry W. MOGNET, Jr., and Penn Eastern Corporation, Anthony Shugart, Nelson P. Shugart, the Pennsylvania Department of Transportation, and the Pennsylvania Turnpike Commission, Appellants.

MASON AND DIXON LINES, INC.

v.

Larry W. MOGNET, Jr. and Penn Eastern Corporation

v.

Anthony SHUGART, Nelson P. Shugart, the Pennsylvania Department of Transportation, and the Pennsylvania Turnpike Commission,

Larry W. Mognet, Jr., Appellant.

Commonwealth Court of Pennsylvania.

Argued April 14, 1994.

Decided July 13, 1994.

2

**4**

Harry D. McMunigal and Martin S. Hohenadel, for appellants.

James R. Ronca, for appellees.

Before DOYLE and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

DOYLE, Judge.

Larry Mognet and Penn Eastern Corporation appeal from an order of the Court of Common Pleas of Cumberland County of June 9, 1993, which granted a Motion for Summary Judgment filed by the Pennsylvania Turnpike Commission (Commission) on the basis that there was no common law duty to protect turnpike travelers from domestic animals that stray onto the roadway in the path of oncoming traffic.

The case arises out of a collision which occurred on the Pennsylvania Turnpike in North Middletown Township, Cumberland County on June 23, 1988, between a tractor trailer driven by Mognet while employed by Penn Eastern, and a tractor trailer driven by Fred Miller carrying cargo for the Mason Dixon Lines. A cow alleged to have been owned by Anthony and Nelson P. Shugart wandered onto the turnpike through a hole in a fence which was owned and maintained by the Commission.[1] The cow somehow entered into the westbound lane of the turnpike directly in the path of Mognet's truck who was unable to avoid hitting it. Mognet lost control of his vehicle which jumped the median guardrail and collided with the tractor trailer being driven by Miller. Mognet's tractor and trailer were totally destroyed; Miller's tractor was

---

1. The Shugart farm was several farms away from the turnpike.

substantially damaged, and Mason Dixon's cargo and trailer were also completely destroyed.

As a result of the accident, the parties filed numerous suits against one another in Cumberland County and Mognet filed his complaint in Dauphin County. The Commission was joined as an original defendant or added as an additional defendant in the various cases. Penn Eastern and Mognet alleged that the Commission was negligent in allowing the cow to wander onto the turnpike. Upon the Commission's motions, the cases were consolidated in Cumberland County and the Commission then filed counterclaims for the damage to the turnpike caused by the collision. On September 10, 1992, the Commission filed its Motion for Summary Judgment which the trial court granted on June 9, 1993. Penn Eastern and Mognet then filed the appeals which are presently before us.

■ On appeal,[2] Penn Eastern and Mognet argue that the trial court erred in granting the Commission's motion for summary judgment because: (1) the Commission owed the plaintiffs, Penn Eastern and Mognet, a common law duty of care, i.e., to provide a highway safe for travel; (2) the Commission is liable under the real estate exception to sovereign immunity found at Section 8522(b)(4) of the Judicial Code, 42 Pa.C.S. § 8522(b)(4); and (3) Penn Eastern and Mognet alleged sufficient facts to preclude summary judgment.

■ As the trial court correctly noted, summary judgment is only appropriate when, after examining the record in favor of the nonmoving party, there is no genuine issue of material fact and the movant clearly establishes its entitlement to judgment as a matter of law. *Dwight v. Girard Medical Center*, 154 Pa.Commonwealth Ct. 326, 623 A.2d 913 (1993). Moreover, when considering a motion for summary

2. When reviewing an order granting summary judgment, our scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Wilson v. Ridgway Area School District*, 141 Pa.Commonwealth Ct. 607, 596 A.2d 1161 (1991), *petition for allowance of appeal denied*, 530 Pa. 650, 607 A.2d 258 (1992). This Court, sua sponte, consolidated the appeals of Penn Eastern and Mognet for argument.

judgment, the court must examine the record in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts and all inferences drawn therefrom. *Banker v. Valley Forge Insurance Co.*, 401 Pa.Superior Ct. 367, 585 A.2d 504, *petition for allowance of appeal denied*, 529 Pa. 615, 600 A.2d 532 (1991).

█ Initially, we note that under the sovereign immunity section of the Judicial Code, 42 Pa.C.S. § 8541–8564, in order to maintain an action against a Commonwealth agency, a plaintiff must show first, that the damages sought would be recoverable under common law or a statute creating a cause of action against one not having an immunity defense, and second, that the injury must fall within an exception to the general grant of immunity to the Commonwealth. 42 Pa.C.S. § 8542(a); *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987).

█ The trial court, in its opinion, concluded first that the Commission had no common law duty to maintain the turnpike in such a way as to keep cattle off of it, citing *Bradley v. Pennsylvania Turnpike Commission*, 121 Pa.Commonwealth Ct. 51, 550 A.2d 261 (1988), *petition for allowance of appeal denied*, 527 Pa. 588, 588 A.2d 511 (1990) (Commission has no duty to warn or protect a motorist as a business invitee from deer wandering onto the turnpike, citing *Rippy v. Fogel*, 108 Pa.Commonwealth Ct. 296, 529 A.2d 608 (1987) (wild animals, as *ferae naturae*, on the highway constitute a condition which cannot possibly be corrected)), and thus Penn Eastern and Mognet had no cause of action against the Commission.[3] The trial court did not directly address whether the cow was a "dangerous condition" within the real estate exception to sovereign immunity at 42 Pa.C.S. § 8522(b)(4)[4].

**3.** The elements of a cause of action in negligence are as follows: (1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the interests of another. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983).

**4.** 42 Pa.C.S. § 8522(b)(4) provides as follows:

As directed by Section 8542(a) the Judicial Code, 42 Pa.C.S. § 8542(a), we must first determine whether the Commission owed Penn Eastern and Mognet a common law or statutory duty before we determine whether the accident falls within the real estate exception to sovereign immunity. Though not so succinctly delineated, the following is the essential argument made by Penn Eastern and Mognet in attempting to establish a duty owed to them by the Commission: the Commission has a general duty to protect the traveling public on the turnpike, which subsumes, (a) a duty to protect them against domestic animals on the roadway, (b) a duty to erect fencing to keep such animals off the turnpike, and (c) a duty to maintain that fencing for that purpose.

Mognet and Penn Eastern begin by asserting that the Commission owed a duty to protect them against animals because the Commission has a general duty to provide a safe highway. Because the cow in this case had wandered onto the highway through a hole in the fencing, Penn Eastern and Mognet argue that the turnpike was not safe. While we may agree that the Commission, by virtue of its administrative and advisory functions, has a general duty to make the *physical structure* of the turnpike reasonably safe for its intended purpose, *Majestic v. Commonwealth, Department of Transportation*, 537 Pa. 81, 641 A.2d 295 (1994); *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992) (*Bendas II*), and while we may readily agree that a cow or any other domestic animal may cause a "dangerous condition" to exist if it strays onto *any* roadway, much more so the Pennsylvania

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims caused by:

. . . .

**(4) Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [pertaining to potholes and other dangerous conditions].

Turnpike, we disagree that the Commission has the responsibility to ensure that the highway is kept clear of such animals. The argument that the Commission has a specific duty to protect the public from the incursion of animals does *not* necessarily follow from the general duty to provide for the safe physical structure of the turnpike itself.

Penn Eastern and Mognet cite our case of *Norbert v. State Police,* 148 Pa.Commonwealth Ct. 505, 611 A.2d 1353 (1992), for the proposition that the Commission bears the general duty of providing for the safe passage of the travelling public. In *Norbert,* the plaintiff (Norbert), was operating a truck in the westbound lane of the Pennsylvania Turnpike, and was injured when his vehicle struck a truck tire and wheel in the middle of his lane. The wheel and tire were alleged to have been the remnants from a previous accident which had been investigated by the Pennsylvania State Police. Norbert brought suit against the State Police alleging that they negligently failed to remove the tire and wheel in breach of their duty as State Policeman. Norbert brought suit against the Commission alleging that its failure to remove the tire and wheel, despite its knowledge of their presence, breached its duty to protect the safety of travellers on the turnpike.

While we acknowledged in *Norbert* that the Commission had some duty to provide for the safety of the travelling public, a close reading of the opinion in *Norbert* indicates that we purposely *assumed* that the plaintiff's complaint adequately alleged a duty on the part of the Commission, to test whether or not the failure to remove a tire and wheel from the roadway fell within any of the exceptions to sovereign immunity. We held that it did not because a tire and wheel lying on the highway were not a dangerous condition "of" the highway. *Id.* We did not hold that the Commission had a duty to protect the plaintiff from dangerous conditions "on" the turnpike as Penn Eastern and Mognet would have us find here. In the present case, the cow, like the tire in *Norbert,* was simply "on" the highway, and was not a dangerous condition "of" the highway.

In *Norbert,* we cited *Department of Transportation v. Pennsylvania Public Utility Commission,* 79 Pa.Common-

wealth Ct. 266, 469 A.2d 1149 (1983), for the proposition that the Commission has a duty to safely maintain the physical structure of the turnpike itself. In both of these cases, the issue was who was *fiscally* responsible for the maintenance of bridges spanning the turnpike. In neither case was tortious conduct in any way at issue.

Regarding stray domestic animals on the road, it has long been the rule in the Commonwealth that the owner of livestock is liable for damages caused by such livestock. *Bender v. Welsh,* 344 Pa. 392, 25 A.2d 182 (1942). To impose liability on the Commission for wandering *domestic* animals such as cows, and thereby somehow infer a common law duty of care where none existed prior to the statutory reaffirmation of sovereign immunity in 1978, *see* 1 Pa.C.S. § 2310, while at the same time declaring that the Commonwealth is immune from suit for accidents caused by *wild* animals under 42 Pa.C.S. § 8522(b)(6),[5] would not only reverse the proper analytical approach hereinbefore articulated, but would impermissibly enlarge an exception to sovereign immunity contrary to logic and contrary to the legislative intent to insulate the Commonwealth from tort liability. *Mascaro.*

Penn Eastern and Mognet's argument, that the Commission is liable for the injuries caused by the cow because the cow entered the turnpike through a hole in its fence, fails because there is no authority or logic which would transfer such liability to the Commission in the absence of an allegation that the Commission had actually assumed the care, custody, or control of the cow within the meaning of 42 Pa.C.S.

---

**5.** Section 8522(b)(6) of the Judicial Code provides for an exception to the rule of sovereign immunity where the injuries to the plaintiff were caused by:

> **(6) Care, custody or control of animals.**—The care, custody or control of animals in the possession or control of a Commonwealth party, including but not limited to police dogs and horses and animals incarcerated in Commonwealth agency laboratories. Damages shall not be recoverable under this paragraph on account of any injury caused by wild animals, including but not limited to bears and deer, except as otherwise provided by statute.

42 Pa.C.S. § 8522(b)(6).

§ 8522(b)(6).[6] *See Bradley.* Penn Eastern and Mognet attempt to distinguish *Bradley* by arguing that the cow is a domesticated animal unlike the deer in *Bradley.*[7] We reject that argument, however, because *Bradley,* while specifically addressing the issue of wild animals, which by statute are NOT an exception to immunity, cannot be read to *infer* that accidents caused by domestic animals ARE an exception, in light of the clear language that domestic animals such as ("but not limited to") dogs and horses must be in "the possession or control of a Commonwealth party" to come within the exception.

█ We also reject the argument that the Commission had a duty to erect fencing to protect the public against the incursion of animals onto the turnpike (and a duty to maintain that fence). In *Bendas II,* this Court had held that Sections 6122 and 6124 of the Vehicle Code, 75 Pa.C.S. §§ 6122, 6124, imposed a statutory duty upon the Commonwealth to erect traffic control devices. The Supreme Court, while affirming the decision of this Court, eschewed this rationale and stated:

> The Commonwealth Court and the Department in their argument on appeal placed great emphasis on those sections of the Vehicle Code which authorized the placement of traffic control signs on or along a state highway. See 75 Pa.C.S. §§ 6122 and 6124. The Commonwealth Court held that these sections not only authorized the Commonwealth

**6.** Penn Eastern and Mognet note that the Pennsylvania State Police received a report that the cow was on the turnpike and were dispatched to look for the cow, but were unsuccessful in locating it. Penn Eastern and Mognet imply that the failure to locate the cow constituted negligence sufficient to impose a duty to protect the public from the cow upon the Commission. We need not consider the ramifications of these facts because Penn Eastern and Mognet failed to develop this argument and it is, therefore, deemed waived. *Park v. Chronister,* 151 Pa.Commonwealth Ct. 562, 617 A.2d 863 (1992), *petition for allowance of appeal denied,* 534 Pa. 654, 627 A.2d 731 (1993). However, were we to consider the implications of these facts, the *failure of the State Police* to discover the cow would in no way impose vicarious liability on the Commission.

**7.** We infer from Section 8522(b)(6) of the Judicial Code, 42 Pa.C.S. § 8522(b)(6), that the legislature intended to insulate Commonwealth parties from injuries by domesticated or wild animals because it addresses both types.

Court [sic] to place such traffic controls, it implicitly created an affirmative duty upon the Department to use this authority in certain situations. ***The Department argues, and we agree, that the clear language of these sections is discretionary, and no duty can be derived from the statute*** . . . . *Bendas II,* 531 Pa. at 182–83 n. 2, 611 A.2d at 1185–86 n. 2 (emphasis added). Based on *Bendas II,* the Commission had no *statutory* duty to erect fencing, and therefore, it owed Penn Eastern and Mognet no *statutory* duty.

We conclude, therefore, that Penn Eastern and Mognet have failed to establish *any* duty, either at common law or by statute, owed to them by the Commission.

■■■■■ Second, even *assuming* there is a duty, we disagree with Penn Eastern and Mognet's argument that this incident would fall within the real estate exception to sovereign immunity. We note again that the real estate exception to sovereign immunity is to be interpreted narrowly against injured plaintiffs. *Mascaro.* Penn Eastern and Mognet argue that the hole in the fence around the turnpike which allowed the cow to enter the actual cartway of the turnpike was the dangerous condition. Essentially, Penn Eastern and Mognet, argue that the Commission failed to properly erect and maintain the fencing on *its* right-of-way, the same arguments raised by the plaintiffs in the seminal case of *Snyder v. Harmon,* 522 Pa. 424, 433, 562 A.2d 307, 311 (1989), in which the plaintiffs were injured when they fell into the open pit of a strip mine which adjoined the highway and which was separated from it by only an earthen embankment.[8] The Supreme Court summarized the complaint thusly:

The basic allegation against PennDOT in the complaint was that this Commonwealth agency was negligent in permitting a dangerous condition to exist within its right-of-way. Specifically, appellees claimed that PennDOT had failed to warn

**8.** We would note that in this case, the fence was not erected to protect against any *adjoining* dangerous condition, because the Shugart's farm, from which the cow is alleged to have come, does not adjoin the turnpike's right-of-way, but is located several farms away from the turnpike. *See supra* note 1.

the public of the pit either by lighting, *or by erecting physical barriers or guardrails along [its] right-of-way.* *Id.* at 428, 562 A.2d at 309 (emphasis added).

In *Snyder,* this Court held that the lack of a barrier might have been a dangerous condition which caused the resultant fall and, therefore, the injuries came within the real estate exception to sovereign immunity, 42 Pa.C.S. § 8522(b)(4). *Snyder v. Harmon,* 102 Pa.Commonwealth Ct. 519, 519 A.2d 528 (1986). In reversing this Court and in interpreting the real estate exception the Supreme Court held that:

> We also are not free to change the clear meaning of the words to reach a desired result if the statutory language is unambiguous. 1 Pa.C.S. § 1921(b). The unambiguous language of Section 8522(b)(4) in relevant part provides 'A dangerous condition of Commonwealth real estate ...'.[5]

---

5 **The critical word in the statutory language is the word 'of'. The meaning ascribed to this preposition is '(2) used to indicate derivation, origin or source.' See The Random House Dictionary of the English language Copyright 1966 by Random House, Inc.**

> These key words indicate that a dangerous condition must derive, originate from, or have as its source the Commonwealth realty.

*Snyder,* 522 Pa. at 433 & n. 5, 562 A.2d at 311 & n. 5 (emphasis added).

Clearly, the cow, which in actuality caused the injury, is not a defect *of* the real estate, nor does it derive from the Commonwealth realty here at issue. Penn Eastern and Mognet would have us find that the hole in the fence caused the accident, but at most the hole can only be said to have facilitated the accident. In summing up the real estate exception to the rule of sovereign immunity in *Snyder,* the Supreme Court further stated:

> Finally, we have found that the real estate exception to the rule of immunity under this section can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself causes the injury, *not merely when it facilitates injury by acts of others, whose acts are outside*

*of the Political Subdivision Tort Claims Act's scope of liability.*

. . . .

We hold, therefore, that sovereign immunity is waived pursuant to 42 Pa.C.S. § 8522(b)(4), where it is alleged that the artificial condition or defect of the land itself causes an injury to occur.[7]

---

7  Heretofore, Commonwealth Court attempted to distinguish governmental immunity from sovereign immunity based on *Mistecka* [*v. Commonwealth*, 46 Pa.Commonwealth Ct. 267, 408 A.2d 159 (1979)]. See *Gratkie v. Air Wisconsin, Inc., supra* [107 Pa.Commonwealth Ct. 461, 528 A.2d 1032 (1987)]. However, in *Rippy v. Fogel*, 108 Pa.Commonwealth Ct. 296, 529 A.2d 608 (1987), the court perceptively concluded, based on *Mascaro*, that *Mistecka* may no longer be the law. In addition, the court also recognized the similarities of the governmental and sovereign immunity sections involving real property as casting serious doubt on the continuing validity of *Mistecka*. Our holding today disavows the rationale of *Mistecka* and its progeny while affirming the similarities of the governmental and sovereign immunity sections that pertain to real property.

*Id.,* 522 Pa. at 434–35 & n. 7, 562 A.2d at 312 & n. 7 (emphasis added); *see also Powell v. Drumheller,* 153 Pa.Commonwealth Ct. 571, 621 A.2d 1197 (1993) (active fault that has a direct nexus to the plaintiff is required to impose liability and come within the exception).

Clearly, neither the fence, nor the alleged hole in it (which allowed the cow to wander onto the turnpike) was the proximate cause of the actual injury here; rather the cow caused the injury, and the cow cannot be said to be an artificial condition or defect *"of"* the highway. The hole in the fence, by allowing any domestic animal to wander onto the highway, may have created a dangerous condition *"on"* the highway, but, nonetheless, the hole was not the dangerous condition *"of"* the highway itself which caused the injury.

This is the identical issue we addressed in *Norbert,* where we concluded that the accident did not fall within the real estate exception to sovereign immunity because the tire was not an artificial condition or defect of the highway itself. We conclude that *Norbert* is controlling and that the cow here, like

the tire in *Norbert,* was clearly not an artificial condition or defect of the turnpike. Therefore, this accident does not come within the real estate exception to sovereign immunity, and thus, the Commission, as a Commonwealth agency, cannot be held liable.

Penn Eastern and Mognet cite *Pine v. Synkonis,* 79 Pa.Commonwealth Ct. 479, 470 A.2d 1074 (1984), in which we found liability where the defendant's car passed through a gap in a medial guardrail and struck plaintiff's vehicle, as an analogous case. First, that case was brought against individual employees of the Department of Transportation (DOT), wherein this Court sought to determine whether *official* immunity, under our prior common law, shielded the individuals from liability. As such, *Pine* is totally inapposite to this case, wherein we are determining whether an injury falls within the real estate exception to sovereign immunity. Second, that case did not address that accident under the subsequently enacted sovereign immunity statute, Sections 8521–28 of the Judicial Code, 42 Pa.C.S. §§ 8521–28. In *Pine* we held that

> We do not disagree that this [sovereign immunity] language, enacted *after* the jury verdict in the instant case, expresses the legislature's clear intent to limit recovery against Department [of Transportation] officials and other Commonwealth employees. We find no cause, however, to apply this language to the circumstances before us. A statute which is not by its terms made retroactive should not be so construed.

*Pine,* 79 Pa.Commonwealth Ct. at 490, 470 A.2d at 1079 (emphasis in original). *Pine,* therefore, is of no precedential value to the case now before us.

In conclusion, the trial court properly granted the Commission's Motion for Summary Judgment because the Commission owed no duty to protect Penn Eastern and Mognet from a domestic animal which wandered onto the highway, and further, the accident is not one which fits within the real estate

exception to sovereign immunity.[9]

Accordingly, we affirm the order of the trial court.

## ORDER

NOW, July 13, 1994, the order of the Court of Common Pleas of Cumberland County in the above-captioned matters is hereby affirmed.

9. Due to our resolution of this case under sovereign immunity, we need not inquire whether Penn and Mognet alleged sufficient facts to preclude summary judgment.