# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Manning                    :

                             :

         v.                :    No. 2151 C.D. 2015

                             :    Argued: June 9, 2016

Commonwealth of Pennsylvania,    :

Department of Transportation,      :

               Appellant   :

BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION BY JUDGE BROBSON**       **FILED:  July 27, 2016**

Appellant Commonwealth of Pennsylvania, Department of Transportation (DOT), appeals by permission from an interlocutory order of the Court of Common Pleas for the 26th Judicial District, Montour County Branch (trial court).  The trial court denied DOT's motion for summary judgment, which was predicated on sovereign immunity.  For the reasons set forth below, we reverse and remand.

On June 28, 1998, at approximately 3:00 a.m., Appellee John Manning (Manning) was driving his vehicle in the eastbound lane of Route 642 in West Hemlock Township, Montour County.  (Reproduced Record (R.R.) at 9a.)  According to Manning, three deer jumped out onto the roadway.  (*Id.* at 39a-40a.)  In order to avoid hitting the deer, Manning initially applied his brakes.  (*Id.* at 39a-40a.)  When he realized, however, he would not be able to stop his vehicle before hitting the deer, he swerved his vehicle off of the roadway.  (*Id.* at 39a-40a, 44a-45a.)  After leaving the roadway, Manning's vehicle struck a drainage culvert, became airborne, and struck a tree.  (*Id.* at 9a, 39a-40a, 44a-45a.)

Manning was ejected from his vehicle and sustained severe injuries. (*Id.* at 9a, 40a, 45a.)

On June 28, 2000, Manning filed a complaint in the trial court against DOT and West Hemlock Township.[1] (*Id.* at 7a-14a.) In his complaint, Manning asserted that DOT was responsible for the maintenance of Route 642 in and around the drainage culvert. (*Id.* at 12a.) Manning further asserted that DOT was negligent by: (1) failing to maintain and control Route 642, including the drainage culvert, in a safe condition for ordinary travel; (2) failing to maintain the drainage culvert in a safe and reasonable manner; (3) failing to erect barriers, guards, reflectors, or similar devices for the protection of motorists in and around the area of the drainage culvert; (4) failing to post signs in the immediate area notifying motorists of the dangerous condition caused by the drainage culvert; and (5) failing to warn motorists of the dangerous condition caused by the drainage culvert. (*Id.* at 12a-13a.) DOT filed an answer and new matter, specifically denying Manning's allegations of negligence and asserting sovereign immunity as an affirmative defense. (*Id.* at 15a-23a.)

Thereafter, the parties engaged in discovery. Manning retained the services of a professional engineer, Bernard M. Telatovich, P.E., who prepared a report regarding the relationship between the accident and the condition and design of Route 642. (*Id.* at 53a-73a.) The report concluded that the roadside area traversed by Manning's vehicle and the concrete/stone headwall of the drainage culvert that Manning's vehicle struck "posed hazards to any vehicle *leaving the*

___

[1] Manning's claims against West Hemlock Township were withdrawn by stipulation of the parties. (Original Record (O.R.) at 24-25.)

*roadway.*" (*Id.* at 60a (emphasis added).) The report also concluded that the side slope of the roadway, which was not considered traversable, and the concrete/stone headwall of the drainage culvert should not have been located within the "clear zone." (*Id.*) The report further concluded that had the eastbound lane of the roadway been protected by a guiderail similar to the westbound lane, Manning's vehicle would not have encountered the hazardous slope or struck the hazardous concrete/stone headwall of the drainage culvert. (*Id.*)

At the conclusion of the discovery process, DOT moved for summary judgment. DOT alleged, in relevant part:

> 10. [Manning's] Complaint alleges that on June 28, 1998[,] at approximately 3:00 a.m., [Manning] left the roadway and struck a drainage area on the south side of State Route 642[,] which caused [Manning's] automobile to strike a tree and eject [Manning] from the automobile. *Id.* at ¶ 7.
>
> 11. The drainage area alleged to have caused the collision was located off the side of State Route 642 within a grassy area. *Id.* at ¶ 7.
>
> 12. In [his] sworn deposition testimony, [Manning] testified that he swerved off the roadway to avoid three deer that jumped out into the roadway from the right side of State Route 642. . . .
>
> . . . .
>
> 20. The drainage area which [Manning] alleges is a dangerous condition is located adjacent to State Route 642. Pl.'s Compl. ¶ 18.
>
> 21. The drainage area which [Manning] alleges to have struck is off of the side of State Route 642 and does not constitute a condition of the roadway itself.
>
> 22. [Manning] has failed to properly plead and develop facts through discovery to establish that any dangerous condition of the travel portion of State Route 642 caused [Manning] to leave the roadway; on the contrary, [Manning] has specifically plead [sic] that deer caused

3

[him] to leave the roadway. Depo. John Manning 31:18-32:6 (June 23, 2004).

(*Id.* at 30a, 32a.) In his response to the motion, Manning admitted the principal components of DOT's allegations.[2] By order dated August 24, 2015, the trial court denied DOT's motion for summary judgment.[3] (Original Record (O.R.) at 50.) DOT sought permission from this Court to appeal the trial court's interlocutory order pursuant to 42 Pa. C.S. § 702(b). (R.R. 86a-93a.) We granted DOT permission to appeal to consider the following issue: "Is [DOT] immune from a

---

[2] Specifically, Manning responded as follows:

1-10. Admitted.

11. Admitted and denied. It is admitted the drainage culvert that caused [Manning's] vehicle to strike a tree and ejected him from his vehicle, was located off the paved roadway, however, was within the area controlled and maintained by [DOT].

12-13. Admitted.

. . . .

20. Denied as stated. It is admitted the drainage area is located off the paved portion of the highway. It is, however, within the Clear Zone of the highway the purpose of which is to allow recovery of a vehicle that leaves the paved roadway.

21. Admitted and denied. It is admitted [the] drainage culvert, which caused [Manning's] injuries[,] is located off the paved portion of the highway, however, it is still within the boundaries of the highway as defined by the statute.

22. Admitted and denied. It is admitted [Manning] left the highway to avoid deer, which were crossing the paved portion of the roadway. The injuries sustained by [Manning], however, were caused when his car struck the culvert causing it to become airborne and ejecting him from the vehicle. . . .

(R.R. 48a, 50a.)

[3] By order dated October 13, 2015, and upon DOT's motion, the trial court amended its August 24, 2015 order "to state that it involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." (O.R. 54.)

4

claim that it was negligent for arguably dangerous conditions of real estate located off the area of a roadway intended for normal travel. *See* Section 8522(b)(4) of the Judicial Code, 42 Pa. C.S. § 8522(b)(4)." (*Id.* at 94a-95a.)

On appeal,[4] DOT argues that Manning's claims do not fall within the "real estate" exception to sovereign immunity, because Manning's injuries were caused when he swerved his vehicle off of the roadway into an area not intended for vehicular traffic.[5] In response, Manning argues that his claims do fall within the "real estate" exception to sovereign immunity, because the definition of "highway" contained in 1 Pa. C.S. § 1991 does not restrict the term to only the paved portion of the road. Manning maintains that, if the legislature intended to restrict the "real estate" exception to the paved portion of the road, the legislature could have used the more restrictive term "roadway" rather than the more expansive term "highway." Manning further argues that the "real estate" exception should also apply because his injuries were caused by Commonwealth realty and

---

[4] This Court's standard of review of a denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Mason & Dixon Lines, Inc. v. Mognet*, 645 A.2d 1370, 1372 n.2 (Pa. Cmwlth. 1994). Our scope of review is *de novo* when we consider questions of law. *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 902-03 (Pa. 2007). A court may grant a motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1267 n.3 (Pa. 2006). The right to judgment must be clear and free from doubt. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). In reviewing the denial of a motion for summary judgment, this Court must view "the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.*

[5] DOT also argues that Manning's claims do not fall within the "pothole" exception to sovereign immunity because a drainage ditch is not a pothole. While we agree with DOT's argument, we note that Manning did not address the "pothole" exception in his brief to this Court, and, therefore, we will not address this issue in further detail.

5

DOT's affirmative act of placing and maintaining the drainage culvert in the "clear zone" of the highway.

Commonwealth agencies are generally immune from civil suit for tort liabilities unless the General Assembly waives sovereign immunity. *See* 1 Pa. C.S. § 2310; and 42 Pa. C.S. § 8521. Section 8522(a) of the Judicial Code (Code), 42 Pa. C.S. § 8522(a), which is often referred to as the "Sovereign Immunity Act," authorizes the imposition of liability against Commonwealth agencies for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person to whom the defense of sovereign immunity is not available. To meet the threshold requirement under Section 8522(a) of the Code, a plaintiff must prove the requisite elements of negligence: (1) the defendant's duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages. *Talarico v. Bonham*, 650 A.2d 1192 (Pa. Cmwlth. 1994).

Even if the plaintiff can establish a *prima facie* case for negligence, a Commonwealth agency will not be liable unless the breach of its duty coincides with an exception to Section 8522(a) of the Code. *Bendas v. Twp. of White Deer*, 611 A.2d 1184, 1186 (Pa. 1992). To defeat the defense of sovereign immunity, the plaintiff must also establish that his or her allegations fall within one of the nine enumerated exceptions to sovereign immunity set forth in Section 8522(b) of the Code. *Dean v. Dep't of Transp.*, 751 A.2d 1130, 1132 (Pa. 2000). Because of our General Assembly's clear intent to insulate government from exposure to tort liability, courts must strictly construe the exceptions to sovereign immunity. *Id.* A dangerous condition of Commonwealth agency real estate and sidewalks,

6

including, but not limited to, highways under the jurisdiction of a Commonwealth agency, is one of the specifically enumerated circumstances for which our General Assembly has waived sovereign immunity.[6]  In order for this "real estate" exception to apply, "a claim . . . must allege that the dangerous condition" derived, originated from or had as its source the Commonwealth realty itself.  *Jones v. Se. Pa. Transp. Auth.*, 772 A.2d 435, 443 (Pa. 2001) (referring to *Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989)).

In this case, Manning appears to argue that DOT had a duty to maintain a "clear zone" surrounding the paved portion of the highway so that a motorist has an area to regain control of an errant vehicle and steer such vehicle back onto the roadway or, in the alternative, to erect guardrails or other protective barriers to prevent motorists from striking the drainage culvert.  Prior decisions of Pennsylvania state courts, however, clearly establish that DOT owed no such duty to Manning.

---

[6] 42 Pa. C.S. § 8522(b)(4) provides:

Exceptions to sovereign immunity.

(b)  Acts which may impose liability. – The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(4)  Commonwealth real estate, highways and sidewalks. – A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5)[, relating to sinkholes and other dangerous conditions].

The Pennsylvania Supreme Court has stated that the "duty of care a Commonwealth agency owes to those using its real estate[] is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used[,] or reasonably foreseen to be used." *Snyder*, 562 A.2d at 312. DOT has a duty to design and construct its highways in a manner that makes them safe for their intended purpose. *Smith v. Dep't of Transp.*, 700 A.2d 587, 590 (Pa. Cmwlth. 1997). DOT does not have a duty to install guardrails or other safety features along the boundaries of its highways. *See Dean*, 751 A.2d at 1134 (holding that DOT has no duty to install guardrails because absence of guardrails does not render highway unsafe for its intended use); *Brown v. Dep't of Transp.*, 11 A.3d 1054, 1057 (Pa. Cmwlth. 2011) (holding that DOT has no duty to install rumble strips because their absence does not create defect in highway). "A highway, for purposes of sovereign immunity, encompasses the 'cartway,' that is, the paved and traveled portion of the highway, and the berm or shoulder, the paved portion to either side of the actual traveled portion of the road, not the right-of-way. . . . [T]he right-of-way off the highway is clearly neither intended to be used nor is regularly used for vehicular travel." *Gramlich v. Lower Southampton Twp.*, 838 A.2d 843, 846-47 (Pa. Cmwlth. 2003) (internal citations omitted), *appeal denied*, 851 A.2d 143 (Pa. 2004).

In *Lambert v. Katz*, 8 A.3d 409 (Pa. Cmwlth. 2010), the three occupants of a vehicle died when the vehicle struck the guard cables and posts located on the right side of the highway, crossed over the guard cables, struck a tree, spun around, and slid down an embankment. The vehicle's occupants' estates filed civil actions against DOT, contending, *inter alia*, that DOT was negligent by "failing to design and maintain the shoulder in a safe manner that would permit a

8

driver to recover from a skid or loss of control." *Lambert*, 8 A.3d at 412. This Court determined that "shoulders are not intended to be used for vehicular traffic. The travel the [e]states contend DOT should have reasonably anticipated−*i.e.*, correction of out of control vehicles−constitutes vehicular travel, and, in turn, is not activity that DOT could reasonably expect on the shoulders of its highways." *Id.* at 418. As a result, this Court concluded that the estates could not establish that DOT was negligent, because they had not demonstrated that "DOT had a duty to make the shoulder wider in anticipation of out of control vehicles." *Id.* at 419.

Likewise, in *Bubba v. Department of Transportation*, 61 A.3d 313 (Pa. Cmwlth.), *appeal denied*, 79 A.3d 1099 (Pa. 2013), a motorist steered her vehicle to the right of the highway to avoid what she believed to be an animal in the road. As she did so, the vehicle's passenger-side tires dropped off of the highway where the paved road abutted the dirt and gravel/berm shoulder. *Bubba*, 61 A.3d at 315. The driver attempted to steer the vehicle back onto the paved road, but the vehicle jumped up from the alleged two-to-three-inch drop-off, crossed to the other side of the highway, overturned, struck a utility pole, and crashed into a house. *Id.* A passenger in the vehicle filed a civil action against DOT, contending that DOT had a duty to maintain the dirt and gravel berm/shoulder abutting the roadway. *Id.* at 316. This Court concluded that "the drop-off did not cause [the passenger's] injuries, [the driver's] lack of control of her vehicle did when she swerved to avoid the animal in the roadway. The shoulder is not intended for vehicular travel and, accordingly, DOT owed no duty to design, construct and maintain the shoulder drop-off." *Id.* at 317.

Similar to the complaining parties in *Lambert* and *Bubba*, Manning is unable to establish that DOT owed him a duty. Manning's injuries were caused by

his act of driving his vehicle off of the paved roadway to avoid hitting the deer; his injuries were not caused by the paved roadway. Further, the area in which the drainage culvert is located is not the highway and is not intended for vehicular travel. As a result, DOT owed no duty to maintain that area safe for vehicular traffic. This Court has previously rejected the "clear zone" concept and has held that DOT does not have a duty to maintain the area surrounding the paved portion of the highway so that a motorist has an area to regain control of an errant vehicle and steer such vehicle back onto the roadway. *See Bubba*, 61 A.3d at 317; *Lambert*, 8 A.3d at 418. In addition, DOT also did not have a duty to install guardrails or other protective barriers to protect motorists from striking the drainage culvert. *See Dean*, 751 A.2d at 1134; *Brown*, 11 A.3d at 1057. Because Manning is unable to establish that DOT owed him a duty, Manning cannot prevail in a negligence action, and summary judgment should have been granted in DOT's favor.

For the reasons set forth herein, we reverse the trial court's order and remand the matter to the trial court with instructions that the trial court enter judgment in favor of DOT.

P. KEVIN BROBSON, Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

John Manning              :
:
v.            :  No. 2151 C.D. 2015
:
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
                Appellant  :

## O R D E R

AND NOW, this 27th day of July, 2016, the Order of the Court of Common Pleas for the 26th Judicial District, Montour County Branch (trial court), is hereby REVERSED, and the matter is REMANDED to the trial court with instructions that it enter judgment in favor of Appellant Commonwealth of Pennsylvania, Department of Transportation.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge