parties, the issue she raises is that Grandparents *lacked standing* to pursue this matter.

The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed. The law of standing provides that one cannot evoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or controversy.

*Kellogg v. Kellogg*, 435 Pa.Super. 581, 584, 646 A.2d 1246, 1248 (1994), quoting *Jackson v. Garland*, 424 Pa.Super. 378, 622 A.2d 969, 971 (1993). We noted in *Kellogg* that traditional principles of standing are modified in child custody cases in that the relevant analysis considers the relationship of the parties asserting standing.

Clearly, there is no issue of standing in this case. Grandparents were granted joint legal custody of these children with Mother's agreement in March, 1994. Mother never appealed that order of custody. Having joint legal custody of the children and partial physical custody, Grandparents clearly had standing to seek primary physical custody. *See Tracey L. v. Mattye F.*, —— Pa.Super. ——, ——, 666 A.2d 734 (1995) (third party, who not only acted in loco parentis but previously was awarded custody, clearly had standing to challenge custody order); *Walkenstein v. Walkenstein, supra* (Grandmother established her standing since she was granted custody of child by court order, and order never was appealed).

Mother's related argument in this appeal is that since Grandparents lacked standing to pursue primary physical custody, the only valid basis for the trial court's order was a finding of dependency, and the court erred, if its order is interpreted as a finding of dependency, in failing to establish a service plan. We need not address this issue as we have determined that Grandparents did indeed have standing to seek physical custody.

Thus, any argument based on dependency is irrelevant.

Order affirmed.

CAVANAUGH, J., concurs in the result.

**Gerald B. ROTHERMEL, Administrator of the Estate of Maria D. Rothermel, Deceased, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

**Nancy McARDLE, Administratrix of the Estate of Maria McArdle, Deceased,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1996.

Decided March 6, 1996.

Gerald F. Strubinger, Jr., for Appellant, Gerald B. Rothermel.

Bobbie Ann Thornburg, for Appellant, Nancy McArdle.

William A. Slotter, Senior Deputy Attorney General, for Appellee.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

FRIEDMAN, Judge.

Gerald B. Rothermel, Administrator of the Estate of Maria D. Rothermel, and Nancy McArdle, Administratrix of the Estate of Maria McArdle (collectively, Administrators), appeal from an order of the Court of Common Pleas of Carbon County (trial court) granting partial summary judgment for the Pennsylvania Department of Transportation (DOT). The trial court held that sovereign immunity shielded DOT from liability for failure to erect a guiderail along a state highway and for failure to provide a clear recovery zone beyond the highway right-of-way.

On February 3, 1989, Maria McArdle and Maria Rothermel were returning from college via State Route 54 when McArdle apparently lost control of her car on an icy patch of road. The car veered off the road, down an embankment, and struck a stand of trees, killing both of its passengers. No guiderail was in place in the area of the accident.

On February 6, 1990, Gerald B. Rothermel filed a wrongful death/survival action against both Nancy McArdle, as administratrix of the estate of Maria McArdle, and DOT. The complaint alleged that the decedent, Maria McArdle, was negligent, careless and reckless in the operation of her motor vehicle and that DOT was, likewise, negligent in permitting the unnatural and artificial accumulation of water and ice on the roadway, in failing to provide and maintain a clear zone beyond the right-of-way and in failing to provide and maintain a guiderail along the roadway.[1]

On October 9, 1990, Nancy McArdle, in turn, filed a wrongful death/survival action against DOT, making allegations substantially similar to those made in the Rothermel action. McArdle and Rothermel subsequently reached a stipulated settlement by an order entered on September 19, 1991, and the trial court granted leave to Rothermel to enter a discontinuance of his claims against Nancy McArdle. The Rothermel and McArdle actions against DOT were subsequently consolidated for the purposes of trial.

In its answer, DOT specifically denied all material allegations of both complaints, including the charges that State Route 54 was in a dangerous condition at the time of the accident, that DOT permitted an unnatural or artificial accumulation of snow or ice and that DOT failed to provide and maintain a clear zone and a guiderail beyond the right-of-way or was under any duty to do so. DOT also alleged that, because it is immune from suit pursuant to section 8522(a) of what is commonly referred to as the Sovereign Immunity Act (Act),[2] and is not within the relevant exception set forth in section 8522(b)(4) of the Act,[3] the action against it should be barred.

---

1. The trial court granted summary judgment on the latter two allegations: the failure to provide and maintain a clear zone and the failure to provide and maintain a guiderail. Of these, only the guiderail is at issue in this appeal. The question of whether DOT negligently permitted the unnatural and artificial accumulation of water and ice on Route 54 is not in front of the court at this time.

2. 42 Pa.C.S. § 8522(a).

3. 42 Pa.C.S. § 8522(b)(4). Section 8522(b)(4), the real estate exception to sovereign immunity, provides, in pertinent part, that the defense of sovereign immunity will be waived when the damages are caused by "[a] dangerous condition of Commonwealth agency real estate and sidewalks, including ... highways under the jurisdiction of a Commonwealth agency."

On December 7, 1994, DOT filed a Motion for Partial Summary Judgment, averring that the embankment and the trees which were, in part, the cause of the decedents' deaths, are outside of the right-of-way owned by DOT. Further, DOT argued, it owes no duty either to make land adjacent to its right-of-way safe for travel or to guard against a motorist leaving the right-of-way and being injured on the adjacent land.

In opposition to DOT's motion, Administrators contended that the real estate exception to sovereign immunity set forth in 42 Pa.C.S. § 8522(b)(4) applied in this case because the defective construction and maintenance of the roadway, coupled with the absence of a guiderail, constitutes a dangerous condition that "derive[s], originate[s] from or [has] as its source the Commonwealth realty." *Snyder v. Harmon*, 522 Pa. 424, 433, 562 A.2d 307, 311 (1989). Moreover, Administrators argued that, under *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), the question of what constitutes a dangerous condition is one of fact to be answered by the jury and is inappropriate for resolution on summary judgment.

In its Amended Order of March 28, 1995, the trial court granted DOT's Motion for Partial Summary Judgment and certified the order for interlocutory appeal pursuant to 42 Pa.C.S. § 702(b) and Rule 1311 of the Pennsylvania Rules of Appellate Procedure. The trial court held that summary judgment is proper with regard to the allegations of negligence stemming from DOT's failure "to provide and maintain a clear zone beyond the pavement at the accident site of proper and adequate width; [and] failing to provide and maintain a roadside recovery area at the accident site free of unyielding objects." The trial court cited *Babcock v. Commonwealth of Pennsylvania, Department of Transportation*, 156 Pa.Cmwlth. 69, 626 A.2d 672, 675 (1993), as controlling authority for the proposition that DOT is under no duty to maintain any such "clear zone," even within its right-of-way.

The trial court further held that sovereign immunity shields DOT from liability for failure to erect a guiderail because such failure cannot be said to be either an artificial condition or a defect *of* the land itself which *caused* the accident, as required by the real estate exception. Finally, the trial court rejected Administrators' argument that *Bendas* prevents it from granting partial summary judgment. The trial court acknowledged that the question of what constitutes a dangerous condition is one of fact for the jury, but reasoned that, in this case, the issue was not whether a dangerous condition existed but whether, even if the condition did exist, DOT would be liable for it as a defect originating from Commonwealth realty. Because the trial court found that Administrators had alleged no defect of the land itself, it held that DOT was immune from liability with regard to the absence of a guiderail and that partial summary judgment was, therefore, proper. It is from this order that Administrators now appeal.[4]

This appeal presents two issues: (1) whether DOT owes a duty to Administrators to maintain a guiderail in order to prevent vehicles from leaving the right-of-way; and (2) whether, if such a duty does exist, Administrators' claim falls within the real estate exception, 42 Pa.C.S. § 8522(b)(4), to the state's general grant of sovereign immunity.

Initially, we note that summary *judgment is only appropriate when, after examining the record, there is no genuine issue of material fact and the movant clearly establishes its entitlement to judgment as a matter of law. Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa.Cmwlth. 1, 645 A.2d 1370 (1994). Moreover, when considering a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts and all inferences to be drawn therefrom. *Id.*

Pursuant to section 8522 of the Act, 42 Pa.C.S. § 8522, in order to maintain an action against a Commonwealth agency for damages arising out of a negligent act, a

---

4. When reviewing an order granting summary judgment, our scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa. Cmwlth. 1, 645 A.2d 1370 (1994).

plaintiff must first show that: (1) the damages sought would be recoverable under the common law or a statute creating a cause of action if the injury were caused by one not having available the defense of sovereign immunity; and (2) the injury falls within one of the exceptions to the sovereign immunity granted the Commonwealth.

■ Addressing first the issue of whether DOT has a common law or statutory duty to maintain State Route 54 in a condition safe for its intended purpose, Administrators allege that DOT is responsible for the design, construction, maintenance, and repair of Route 54 and, therefore, does indeed have a general duty to provide a safe roadway. They further allege that DOT breached that duty by negligently[5] failing to install and maintain a guiderail, thereby creating a dangerous condition of the highway, and that DOT's negligence was the direct and proximate cause of the decedents' injuries. DOT, on the other hand, does not deny its general duty to make the roadway safe, but denies that it is under any duty to redesign, change or update the design of state highways, or to provide and maintain a guiderail. DOT also specifically denies that any dangerous condition existed on State Route 54, that it had notice of any such condition or that it was negligent in any manner with respect to the accident.

■ In *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989), the Pennsylvania Supreme Court clearly recognized that DOT, by virtue of its administrative and advisory functions, owes a general duty to those using its real estate to ensure "that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Id.* at 435, 562 A.2d at 312. In certain instances, where it is necessary to ensure that the condition of the highway is safe for travel, the activity for which the highway is regularly used, intended to be used and reasonably foreseen to be used, the common law imposes an additional duty on a government party, in this case DOT, to reduce the risks posed by steep cliffs and embankments in close proximity to the highway by erecting guiderails or other barriers. *Balla v. Sladek*, 381 Pa. 85, 112 A.2d 156 (1955). *See also Winegardner v. Springfield Township*, 258 Pa. 496, 102 A. 134 (1917) (holding that "[i]f a public road . . . is so dangerous by reason of its proximity to a precipice that common prudence requires extra precaution, in order to secure safety to travelers, the [government party] is bound to use such precaution and the omission to do so is negligence.").

Accordingly, if Administrators could establish that the conditions along Route 54 in the area of the accident, *i.e.*, the slope of the embankment and the proximity of the embankment to the roadway, were such that, without a guiderail, Route 54 would not be safe for travel, they would have met the first requirement for establishing a cause of action against DOT at common law.[6]

Nevertheless, a Commonwealth agency may have breached a duty owed yet not be liable unless the breach is coincidental with an exception to the Act. Thus, although Administrators could, potentially, maintain an action at common law against DOT, their claim will be barred unless it falls within one of the enumerated exceptions to sovereign immunity.

■ Administrators assert that DOT's failure to install a guiderail along the roadway where the accident occurred falls within the real estate exception to sovereign immunity.

---

5. The elements of a cause of action in negligence are as follows: (1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injuries; and (4) actual loss or damage to the interests of another. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983).

6. As to whether Administrators would have a cause of action against DOT for violation of a statutory duty, DOT only has a general statutory duty to maintain and repair all roads and highways under its jurisdiction. *See* section 407 of the State Highway Law, Act of June 1, 1945, P.L. 1242, 36 P.S. § 670–407 and section 2002 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 512(a)(8). There are no statutes mandating that DOT provide a shoulder on a roadway, install guiderails or keep the berm of state roadways free of debris.

Specifically, they argue that the absence of a guiderail created a dangerous condition of Commonwealth realty and that, therefore, DOT should not be shielded from liability. Moreover, Administrators contend that the trial court erred in granting partial summary judgment for DOT because, under *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992) and *Fidanza v. Commonwealth of Pennsylvania, Department of Transportation*, 655 A.2d 1076 (Pa.Cmwlth. 1995), the jury should have been permitted to determine whether the absence of a guiderail created a dangerous condition. DOT, however, maintains that the trial court was correct in granting partial summary judgment because the condition, even if dangerous, is not a condition *of* the realty itself that *caused* decedents' injuries. We agree.

■ The expressed legislative intent to insulate the Commonwealth and its political subdivisions from liability requires courts to interpret the exceptions to sovereign immunity narrowly against injured plaintiffs. *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987). Where the statutory language is unambiguous, we are not free to change the clear meaning of the words to reach a desired result. Our supreme court has held that the unambiguous language of section 8522(b)(4) indicates that a dangerous condition "must derive, originate from or have as its source the Commonwealth realty." *Snyder*. Moreover, a dangerous condition or defect of the land itself must cause, not merely facilitate, the injury in order for the real estate exception to apply. *Fidanza;*

*Babcock v. Commonwealth of Pennsylvania, Department of Transportation*, 156 Pa. Cmwlth. 69, 626 A.2d 672 (1993).

■ Administrators' reliance on *Fidanza* and *Bendas* is misplaced. Although, in both cases, the court held that the issue of what constitutes a dangerous condition is a question of fact, not law, and is to be decided by the jury, neither *Fidanza* nor *Bendas* are dispositive here. Administrators' argument fails to recognize that, even if a jury could find a dangerous condition to have existed, the real estate exception imposes two additional requirements that must be met before a court may abrogate DOT's sovereign immunity: the condition must be one *of* the Commonwealth realty and the condition must be related causally to the accident. The question of whether or not these further requirements are satisfied, unlike that of whether or not a dangerous condition existed, is a preliminary determination to be made by the trial court as a matter of law. *See Hall v. Acme Markets, Inc.*, 110 Pa. Cmwlth. 199, 532 A.2d 894 (1987).[7]

Here, the absence of a guiderail on Route 54, dangerous or otherwise, did not cause the accident itself but, at most, merely facilitated the decedents' injuries and produced more severe consequences. *See Babcock* (affirming grant of partial summary judgment for DOT where alleged dangerous condition, log lying on embankment off road, merely facilitated accident).[8] The alleged cause of the fatal accident was an unnatural and artificial accumulation of water and ice on the road-

---

7. In *Hall*, the appellants contended that the trial court erred in granting summary judgment because genuine issues of fact remained; namely, whether a "dangerous condition" existed at the time of the accident. They argued that whether a condition is dangerous is for a jury alone. We noted that:

> While it is true that this is an issue which must be determined by the factfinder, it does not enter into the determination of whether a claim against a party is barred by immunity. The question of whether a "dangerous condition" exists arises only after it has been determined that suit is allowed under the exceptions to sovereign immunity found in 42 Pa.C.S. § 8522(b). The determination of whether a suit is barred by official or sovereign immunity is solely a matter of law.

*Id.* at 895.

8. It is important to recognize the distinction between the cause of the *accident* and the cause of the *injuries* resulting from the accident. For purposes of deciding the applicability of the real estate exception to sovereign immunity, it is the cause of the *accident*—the event that set the accident in motion—that is determinative.

Here the ice and snow on the roadway caused the accident; if the decedents had never hit the ice and spun across the road, they would have never gone over the embankment. On the other hand, even if a guiderail had been in place along Route 54, the *accident* would still have occurred. Although a guiderail may have prevented the accident's unfortunate result, decedents' fatal injuries, it would not have prevented the accident from happening.

way. If accepted as true by the factfinder, it was this condition rather than the lack of guiderail that made the decedents' car spin out of control and leave the highway. Because Administrators have failed to establish a causal connection between the decedents' accident and the condition of the property within DOT's control, the real estate exception to state sovereign immunity, 42 Pa.C.S. § 8522(b)(4), does not apply.[9] Therefore, Administrators have not met the second requirement for maintaining a cause of action against DOT for damages arising out of a negligent act.

Accordingly, we hold that, as a matter of law, DOT is immune from liability for any injuries which may have been facilitated by the absence of a guiderail along Route 54.[10] We, therefore, affirm the trial court's grant of partial summary judgment for DOT, and remand this case for a trial on the remaining issues.

### ORDER

AND NOW, this 6th day of March, 1996, the order of the Court of Common Pleas of Carbon County, dated March 28, 1995, is affirmed, and the case remanded for trial on the remaining issues.

Jurisdiction relinquished.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The majority opinion holds that the absence of a guardrail did not cause injuries to Maria Rothermel and Maria McArdle (decedents) but merely facilitated their injuries. I disagree that, taking the facts as alleged in the pleadings, the absence of a guardrail was not a proximate cause of the injuries and would hold that the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) is not shielded from liability under the Sovereign Immunity

Act, as codified in the Judicial Code at 42 Pa.C.S. §§ 8521–8528.

This case involves two young women who lost control of their vehicle on an icy patch on the road, in a place where there were no guardrails, resulting in the car leaving the road, travelling down an embankment next to the road and striking a stand of trees. Both women died as a result of injuries sustained in the accident.

Decedents' administrators each filed wrongful death actions against PennDOT alleging that it was negligent in permitting ice and water to accumulate on the road, in failing to erect a guardrail along the roadway and in failing to provide and maintain a clear zone for recovery of vehicles leaving the roadway. PennDOT filed a motion for partial summary judgment raising the defense of sovereign immunity and the motion was granted by the trial court. The issue before us is whether PennDOT had a duty to erect a guardrail and whether the lack of a guardrail was a proximate cause of decedents' injuries and was within the real estate exception of sovereign immunity, set forth in 42 Pa.C.S. § 8522(b)(4).

Immunity has been waived for dangerous conditions of the highway under the jurisdiction of a commonwealth agency. Although it is not an insurer against all defects, a commonwealth agency is required to maintain its highways in a reasonably safe condition for the travelling public. The duty to keep the highway safe for the travelling public includes the duty to design the highway in a reasonably safe manner, maintain the highway in a reasonably safe manner, and update the design, if improvements are necessary, to protect the public from harm. *Mitchell v. Borough of Rochester*, 395 Pa. 373, 150 A.2d 338 (1959); *Fidanza v. Commonwealth of Pennsylvania, Department of Transportation*, 655 A.2d 1076 (Pa.Cmwlth.1995); *Felli*

9. Because there is no causal relationship between the alleged dangerous condition here and the accident, we need not decide if the absence of a guiderail on Route 54 was a dangerous condition *of* the property.

10. Our ruling merely precludes recovery for injuries sustained due to the lack of a guiderail. Administrators may still recover for any injuries

caused by an unnatural and artificial accumulation of ice and snow resulting from a defectively designed and maintained Commonwealth roadway, provided they successfully establish such alleged dangerous condition. In such case, DOT will be liable for all proximately caused injuries, including those aggravated or incurred by the car leaving the road and hitting the trees.

*v. Commonwealth, Department of Transportation,* 666 A.2d 775 (Pa.Cmwlth.1995).

As the majority opinion recognizes, the common law duty to the travelling public extends to placing adequate guardrails to prevent skidding cars from going off the side of the road, regardless of whether it is negligent for the icy condition of the roadway.[1] *McCracken v. Curwensville Borough,* 309 Pa. 98, 110, 163 A. 217, 221 (1932).[2] Even though there is a duty at common law to place guardrails, the majority holds that Administrators' actions for negligence in failing to erect a guardrail is barred by sovereign immunity because the lack of the guardrail did not "cause" the accident, but merely facilitated the injuries because the accident was caused by the ice and snow on the road.

I disagree with the majority for several reasons. First, there can be two causes of injuries and both can be a proximate cause.[3] The Act does not prohibit liability where, in a chain of events, there is more than one proximate cause of the accident, so long as the realty itself did not merely facilitate injuries caused by others. In *Snyder v. Harmon,* 522 Pa. 424, 434, 562 A.2d 307, 312 (1989),[4]

the Supreme Court stated the requirement as follows:

> Finally, we have found the real estate exception to the rule of immunity under this section can be applied only to those cases where it is alleged that the artificial condition or defect of the land itself *causes injury,* not merely when it *facilitates injury by acts of others,* whose acts are outside of the Political Subdivision Tort Claims Act's scope of liability. See Mascaro v. Youth Study Center[5] . . .

The absence of a guardrail did not merely facilitate injury caused by the acts of others in this case but caused injuries to the decedents by allowing the sliding vehicle to leave the roadway. *See Yoders v. Township of Amwell,* 172 Pa. 447, 33 A. 1017 (1896) (discussing the absence of a guardrail as a proximate cause of the accident). *See also Lattanzi v. State of New York,* 53 N.Y.2d 1045, 425 N.E.2d 887, 442 N.Y.S.2d 499 (1981). The allegations here are that the failure to place a guardrail to prevent cars from going over the embankment was negligent, and that if there had been a guardrail, the injuries would not have been fatal.[6] Where, as

---

1. There is no common law duty requiring a governmental entity to remove ice or snow from a highway. *Hunt v. Commonwealth, Department of Transportation,* 137 Pa.Cmwlth. 588, 587 A.2d 37, *petition for allowance of appeal denied,* 528 Pa. 633, 598 A.2d 286 (1991); *Huber v. Commonwealth, Department of Transportation,* 122 Pa. Cmwlth. 82, 551 A.2d 1130 (1988), *petition for allowance of appeal denied,* 525 Pa. 637, 578 A.2d 931 (1989).

2. The Supreme Court stated in that case:

> It is a matter of common knowledge that automobiles will skid on icy pavements and that cars traveling at even moderate speed become unmanageable when they start to skid on such pavements.

*Id.*

3. A negligent act may be a proximate cause of damage even though other causes may have joined in producing the result. *Commonwealth, to Use of Willow Highlands v. U.S. Fidelity & Guaranty Company,* 364 Pa. 543, 73 A.2d 422 (1950); *Shippen Township v. Portage Township,* 133 Pa.Cmwlth. 142, 575 A.2d 157, *petition for allowance of appeal denied,* 526 Pa. 643, 584 A.2d 324 (1990). To escape liability where there are two or more substantial causes of damages, the defense must show that the plaintiff's injuries would have been the same even without its negli-

gence. *DeVita v. Durst,* 167 Pa.Cmwlth. 105, 647 A.2d 636 (1994).

4. The Supreme Court's decision in *Snyder* was not based on the issue of causation but on the existence of a dangerous condition of the realty. In that case, the alleged dangerous condition was a deep chasm that was admittedly some distance from the edge of PennDOT's right-of-way. Penn-DOT's failure to warn the decedents of the strip mine chasm was not a dangerous condition of the highway. That is not the case here. The allegations are that the embankment is so close to the roadway as to make the road, without guardrails, a dangerous condition, and that the failure to erect guardrails caused decedents to leave the traveled portion of the roadway.

5. 514 Pa. 351, 523 A.2d 1118 (1987).

6. This case is distinguishable from *Babcock v. Commonwealth, Department of Transportation,* 156 Pa.Cmwlth. 69, 626 A.2d 672 (1993), *petition for allowance of appeal denied,* 536 Pa. 647, 639 A.2d 33 (1994), where a driver was injured when her vehicle left the traveled portion of the road, went into a ditch, overturned, and continued sliding until it struck a tree or log in the unopened portion, causing injuries to the driver. The driver alleged negligence by PennDOT in allowing the log to protrude onto the highway or

here, a car slides out of control due to icy patches on the roadway and decedents were using the roadway in the normal manner, the failure to maintain guardrails to protect against a steep embankment is a proximate cause of the injuries. *Yoders.*[7]

Second, apparently because of the duty to make the highway safe for the travelling public, our Supreme Court does not solely analyze highway cases employing the "on-of" distinction that it uses for real property and sidewalks,[8] but looks at the highway as an integrated whole and focuses on whether there was a dangerous condition that the governmental entity had a duty to correct. This new focus was announced in *Bendas v. Township of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992), *reargument denied,* which involved a collision between two automobiles at the intersection of a state and local road. Both drivers sued the Commonwealth (as well as the local government) contending that PennDot negligently failed to erect traffic control devices at the intersection, thereby failing to correct a "dangerous condition." A "dangerous condition" is defined as "a state of affairs that hampers or impedes or requires correction ... [I]t is clear that circumstances here give rise to a condition which is related to travel on the highway and

is conceivably correctable." *Wyke v. Ward,* 81 Pa.Cmwlth. 392, 474 A.2d 375, 379 (1984) (quoting from *Mistecka v. Commonwealth,* 46 Pa.Cmwlth. 267, 408 A.2d 159, 162 (1979)). In *McCalla v. Mura,* 538 Pa. 527, 649 A.2d 646 (1994), while deeply divided on other issues, the Supreme Court appears to have extended the *Bendas* rationale to the street exception applicable to local agencies.[9]

Just as important, *Bendas* held that unlike the "on-of" distinction which is a question of law (some would say of metaphysics), what constitutes a "dangerous condition" is one of fact for the factfinder to determine. *Fidanza.* Because whether the lack of the guardrail was a "dangerous condition" is a question of fact, I believe the grant of summary judgment was inappropriate. Accordingly, I dissent.

SMITH, J., joins in this dissent.

---

its right-of-way. Stating that the injuries were caused by the car leaving the road and the shoulder of the road, striking the ditch and overturning, we held that the log merely facilitated the *injuries because as it was, lying on the ground, it* could not have injured the driver unless her car had first slid off the highway and then slid further off the shoulder onto the embankment. In this case, the allegations are that PennDOT was negligent in failing to prevent cars from going off the traveled portion of the road onto an adjacent embankment. Leaving the roadway is much closer to the initial event, sliding on the icy road, *than the existence of the log in Babcock,* and is a proximate cause of the injuries to decedents. Moreover, unopened portions of the highway right-of-way that may or may not be needed in the future for road purposes are not part of the highway and are not within the exception.

7. The majority appears to say that there cannot be two proximate causes of the accident because of the distinction it makes between the cause of the accident and cause of the injuries. In other circumstances, the words could be used interchangeably without consequence; however, in this case, the majority opinion relies on that distinction because the icy conditions initially

caused the car to slide in order to find that causation does not exist as to the failure to erect a guardrail. Without citing any authority for the proposition, the majority opinion states that: "[f]or purposes of deciding the applicability of the real estate exception to sovereign immunity, it is the cause of the *accident*—the event that set the accident in motion—that is determinative". Maj. opinion at 842, n. 8. This assertion is without any basis in the Act or the case law. In Section 8522, the legislature referred to damages and injury, not "accident", stating that "the defense of sovereign immunity shall not be raised to claims for *damages* caused by" a dangerous condition. *See also Fidanza v. Com., Dept. of Transportation,* 655 A.2d 1076, 1080 (Pa.Cmwlth. 1995); *Gilson v. Doe,* 143 Pa.Cmwlth. 591, 600 A.2d 267 (1991).

8. *See Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995); *Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184 (1984).

9. *See also Majestic v. Commonwealth, Department of Transportation,* 537 Pa. 81, 641 A.2d 295 (1994), *affirming in part, reversing in part, Majestic v. Commonwealth, Department of Transportation,* 144 Pa.Cmwlth. 109, 601 A.2d 386 (1991).