**Deena SMITH and Steven Smith, her husband, Appellants,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

Commonwealth Court of Pennsylvania.

Argued June 4, 1997.

Decided Sept. 11, 1997.

---

5. Section 414 of the Communications Act of 1934 was not amended by the Act.

Carl R. Schiffman, Pittsburgh, for appellants.

Robert T. McDermott, Pittsburgh, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and FLAHERTY, JJ.

FRIEDMAN, Judge.

Deena Smith and Steven Smith, her husband, appeal from an order of the Court of Common Pleas of Centre County (trial court) which granted the Pennsylvania Department of Transportation's (DOT) motion for summary judgment and dismissed the Smiths' complaint. We reverse and remand.

On January 23, 1992, Deena Smith was a passenger in the car of her business colleague, Melissa Schmader, when Schmader lost control of her vehicle while travelling south on State Route 350. Both Smith and Schmader suffered injuries when Schmader's vehicle spun across the northbound lane and, after leaving the road, hit a tree along the east berm.

On January 19, 1992, the Smiths filed a complaint against Schmader and DOT,[1] alleging, inter alia, that DOT was negligent in: (1) permitting icy patches to accumulate on State Route 350, thereby causing a dangerous condition of the real estate; (2) failing to clear the roadway of the dangerous condition of ice accumulation; (3) improperly constructing and designing the highway; (4) permitting the existence of a tree in dangerously close proximity to the roadway; (5) failing to have guardrails or other barriers on the side of the road; and (6) failing to have proper signs indicating the roadway direction. (Smiths' complaint at 5–6.) In its answer, DOT specifically denied all material allegations of the Smiths' complaint.

On April 18, 1996, DOT filed a motion for summary judgment, alleging that it is immune from suit pursuant to section 8522(a) of what is commonly referred to as the Sovereign Immunity Act (Act),[2] and that it is not within the relevant exception set forth in section 8522(b)(4) of the Act.[3] Pursuant to section 8522 of the Act, 42 Pa.C.S. § 8522, determination of whether a plaintiff has stated a cause of action against a Commonwealth agency for damages arising out of a negligent act requires a two-pronged analysis. A plaintiff must first show that: (1) the damages sought would be recoverable under the common law or a statute creating a cause of action if the injury were caused by one not having available the defense of sovereign immunity; and (2) the injury falls within one of the exceptions to the sovereign immunity granted the Commonwealth. After considering the evidence, the trial court concluded that the Smiths failed to state a cause of action in negligence;[4] thus, the trial court

1. On August 1, 1995, the trial court granted Schmader's motion for judgment on the pleadings, dismissing the suit against her.

2. 42 Pa.C.S. § 8522(a).

3. Section 8522(b)(4), the real estate exception to sovereign immunity, provides, in pertinent part, that the defense of sovereign immunity will be waived when the damages are caused by "[a] dangerous condition of Commonwealth agency real estate and sidewalks, including ... highways under the jurisdiction of a Commonwealth agency." 42 Pa.C.S. § 8522(b)(4).

4. The elements of a cause of action in negligence are as follows: (1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injuries; and (4) actual loss or damage to the interests of another. *Morena v. South Hills Health System*, 501 Pa. 634, 462 A.2d 680 (1983).

In its opinion, the trial court focused on the Smiths' allegations that DOT had allowed patches of ice to remain on State Route 350 on the day of the accident. Because DOT owes no specific duty to a particular plaintiff where snow and ice on a highway are natural accumulations resulting from precipitation, *see Huber v. Department of Transportation*, 122 Pa.Cmwlth. 82, 551

granted DOT's motion for summary judgment without reaching the second prong of the analysis. It is from the trial court's order that the Smiths now appeal.[5]

Initially, we note that summary judgment is only appropriate when, after examining the record, there is no genuine issue of material fact and the movant clearly establishes its entitlement to judgment as a matter of law. *Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa.Cmwlth. 1, 645 A.2d 1370 (1994). Moreover, when considering a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts and all inferences to be drawn therefrom. *Id.*

On appeal, the Smiths concede that DOT owes no duty to motorists to remove natural accumulations of ice and snow. However, the Smiths contend that their complaint states a cause of action in negligence by alleging that DOT breached its common law duty under *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992), to maintain State Route 350 in a condition safe for its intended purpose. The Smiths assert that, regardless of the accumulation of ice and snow, DOT's negligent construction and design of the roadway, coupled with the lack of proper signs and guardrails, was sufficient to cause the accident; thus, according to the Smiths, DOT may be held liable for Deena Smith's injuries.

In *Bendas*, the supreme court clearly recognized that DOT, by virtue of its administrative and advisory functions, owes a general duty to those using its real estate to ensure "that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Id.* at 183, 611 A.2d at 1186 (quoting *Snyder v. Harmon*, 522 Pa. 424, 435, 562 A.2d 307, 312 (1989)). We agree with the Smiths that, under *Bendas* and *Snyder*, DOT's duty to make its high-

ways safe for their intended purpose includes a duty to properly design and construct those highways. However, DOT contends, and the trial court agreed, that there is nothing in either the Smiths' allegations or their expert's report which would indicate that, "separate and apart from the icy/snowy condition of the roadway, a defect or defects caused the vehicle to slide off the roadway backwards into a tree." (DOT's brief at 7.) We disagree.

In support of their allegations of improper construction and design, the Smiths introduced an expert report, which states in relevant part that:

> [t]his comparison shows that SR 350 is substandard in pavement and shoulder width, horizontal curvature, vertical grade and clear zone width. Having a steeper grade and sharper curve with limited sight distance should have alerted PaDOT to the need to erect warning signing to alert drivers, particularly those unfamiliar with the area, to the presence of the horizontal curve.

(Smiths' expert report at 3.) The report also states that:

> [a]s one approaches the accident site from the north, southbound SR 350 is on a combined horizontal curve and a crest vertical curve. This geometry creates a substantially worse problem for drivers in poor weather conditions than if it were a straight, level section of roadway. If one does not have to accelerate on an upgrade and then brake becuase [sic] of the subsequent downgrade, or if there was no demand for side friction generated by going around a curve, *an accident associated with loss of vehicle control would be far less likely to occur even if the roadway surface was slippery.* The basic rules in driving on slippery pavements are to not apply your brakes unnecessarily and not change direction suddenly. The combination of a horizontal curve and a crest verti-

A.2d 1130 (1988), the trial court concluded that the Smiths had failed to establish the first element required to sustain a cause of action in negligence.

5. When reviewing an order granting summary judgment, our scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Mason & Dixon Lines, Inc. v. Mognet*, 166 Pa. Cmwlth. 1, 645 A.2d 1370 (1994).

cal curve made both actions almost certain to occur.

(Smiths' expert report at 4) (emphasis added). Because the Smiths' foregoing allegations and evidence are sufficient, if believed by the factfinder, to establish that the construction and design of State Route 350 in the area of the accident was such that the roadway would not have been safe for travel, even without the natural accumulation of ice and snow, the Smiths state a proper cause of action in negligence and meet the first requirement for maintaining a cause of action against DOT. Thus, the trial court erred as a matter of law in finding otherwise.

■ Nevertheless, even where a Commonwealth agency may have breached a duty owed to the public, the agency cannot be held liable for the resulting damage unless the breach is coincidental with an exception to the Act. *See* 42 Pa.C.S. § 8522. In support of its position that the Smiths' cause of action does not fall within the real estate exception to sovereign immunity set forth in section 8522(b)(4) of the Act, DOT relies on a recent decision of this court, *Rothermel v. Department of Transportation,* 672 A.2d 837 (Pa. Cmwlth.1996). However, DOT's reliance on *Rothermel* is misplaced.

In *Rothermel,* the plaintiffs filed a wrongful death/survival action against DOT after two college students were killed when their car hit a patch of ice, veered off the road and down an embankment, and struck a stand of trees. The only issue before us on appeal was whether the accident was caused by DOT's alleged negligent failure to provide and maintain a guardrail. Because we concluded that there was no causal relationship between the alleged dangerous condition, i.e., the absence of a guardrail, and the accident,[6] we held that the real estate exception to sovereign immunity did not apply.

In contrast to *Rothermel,* the plaintiffs here allege that the negligent design and construction of State Route 350 constitutes a dangerous condition of the highway which caused the accident. Because, unlike in *Rothermel,* this alleged dangerous condition

*of* the real estate could have caused Deena Smith's accident, and because we must examine the record in the light most favorable to the nonmoving party, we believe that the Smiths have met the second requirement for maintaining a cause of action against DOT for damages arising out of a negligent act.

■ Accordingly, we reverse the trial court's order granting summary judgment, and, because the question of whether the design and construction of State Route 350 constitutes a dangerous condition is one of fact for the jury, *see Bendas,* we remand this case for trial.

*ORDER*

AND NOW, this 11th day of September, 1997, the order of the Court of Common Pleas of Centre County, dated July 24, 1996, is reversed and this case is remanded for trial.

Jurisdiction relinquished.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's decision to reverse the trial court's granting of summary judgment in favor of PennDot because the expert report relied upon does not state that State Route 350 was defectively designed.

On January 23, 1992, Deena Smith (Smith) was injured while riding as a passenger in a vehicle driven by a colleague. The driver of the car lost control when she hit a patch of ice while travelling on State Route 350, causing the car to leave the road and hit a tree. The road was covered with ice and slush. Smith and her husband filed a complaint against PennDot alleging numerous defects of the roadway, including improper design and construction, lack of proper signage, lack of guardrails and accumulations of icy patches. Smith provided an expert report to support her contention that the road was defectively designed and constructed. PennDot filed a motion for summary judgment contending that it was not liable for the

---

**6.** We noted that it was the alleged unnatural and artificial accumulation of ice and snow, rather than the lack of a guardrail, which made the

decedents' car spin out of control and leave the highway.

accident because it had no duty to Smith to remove the ice from the road, the lack of warning signs and guardrails did not cause the accident, and the expert's report did not contain any findings that the road was defectively designed or constructed. The trial court granted PennDot's motion for summary judgment, finding that the expert report offered by Smith in support of her contentions did not state that the road was improperly designed or constructed. It also stated that under our recent decision in *Rothermel v. Department of Transportation,* 672 A.2d 837 (Pa.Cmwlth.1996), because the ice caused the car to slide off the road, that secondary negligence on the part of a government agency was not actionable.[1]

On appeal, Smith contends that summary judgment should not have been granted because, even absent the ice and slush, she alleged and proved through her expert's report that the accident would have occurred as a result of PennDot breaching its duty to properly design and construct State Route 350 and because of lack of signage on that roadway. Not addressing the signage issue, the majority only reverses the trial court's grant of summary judgment because the expert report, if believed by a jury, would establish that PennDot was negligent in its defective design and construction of State Route 350.

The following are the relevant portions of the expert report on which the majority relies:

[t]his comparison shows that SR 350 is substandard in pavement and shoulder width, horizontal curvature, vertical grade and clear zone width. Having a steeper grade and sharper curve with limited sight distance should have alerted PaDOT to the need to erect warning signing to alert drivers, particularly those unfamiliar with the

area, to the presence of the horizontal curve.

(Smiths' expert report at 3.)

The report additionally states:

[a]s one approaches the accident site from the north, southbound SR 350 is on a combined horizontal curve and a crest vertical curve. This geometry creates a substantially worse problem for drivers in poor weather conditions than if it were a straight, level section of roadway. If one does not have to accelerate on an upgrade and then brake because [sic] of the subsequent downgrade, or if there was no demand for side friction generated by going around a curve, an accident associated with loss of vehicle control would be far less likely to occur even if the roadway surface was slippery. The basic rules in driving on slippery pavements are to not apply your brakes unnecessarily and not change direction suddenly. The combination of a horizontal curve and a crest vertical curve made both actions almost certain to occur.

(Smiths' expert report at 4.)

Agreeing with Smith, the majority holds that the expert report concludes that the roadway was defective in both design and construction and, even without the natural accumulation of ice, could have been the cause of the vehicle in which Smith was riding to slide off the roadway backwards into a tree.[2]

While Pennsylvania has not yet addressed what factors should be considered in determining whether a Commonwealth agency is negligent in designing or constructing a roadway, other jurisdictions have delineated some of the factors that should be considered in making such a determination. Those include whether the design of the highway failed to measure up to accepted engineering

---

1. I agree with the majority that the holding in *Rothermel* does not apply to this case because Smith now contends that the accident occurred only because of the defective design of the roadway and not because of accumulated ice on the roadway.

2. There is no dispute that PennDot, as a Commonwealth agency, is immune from suit regarding any accumulation of ice on the roadway, and the Smiths concede on appeal that PennDot owes them no duty to remove natural accumulations of ice. *See Huber v. Department of Transportation,* 122 Pa.Cmwlth. 82, 551 A.2d 1130 (1988), *peti-*

standards at the time the road was built;[3] whether any other accidents occurred at the same location;[4] and whether the design of the road was obviously dangerous.[5] Nothing in the expert's report mentions those factors or any factor that would establish that State Route 350 was defectively designed or constructed and was the cause of the accident without ice on the roadway. All the expert's report states is that the roadway would have been safer if it had been straight rather than curved and did not go up and down. Just because a roadway has a steep grade and/or a sharp curve does not make the roadway inherently defective or dangerous, especially in Pennsylvania, whose terrain, say, unlike Kansas, often requires roads to do just that. The report in no way establishes defective design and the trial court properly granted summary judgment on that basis.

It is not surprising that the expert does not mention any of the factors needed to establish that the road was defectively designed, because the defect he found existed that caused the accident was the lack of signage, not the design of the road. His report stated that a warning sign may have been appropriate based on the grade and curve of the road as alleged by Smith in her complaint. The question then is whether that "conclusion" by the expert that lack of signage caused the accident supports a cognizable cause of action not subject to summary judgment.

To be able to maintain an action in negligence, the plaintiff must first show that the defendant breached a duty owed to him or her. *Felli v. Department of Transportation,* 666 A.2d 775 (Pa.Cmwlth.1995). It was well-settled that at common law a governmental agency has no duty to erect traffic signs and is not liable for any damages or injuries because of lack of signs.[6] *See Carter v. City of Philadelphia,* 137 Pa.Cmwlth. 152, 585 A.2d 578 (1991); *Rinaldi v. Giblin,* 70 Pa. Cmwlth. 253, 452 A.2d 1126 (1982). *See Sparks v. Kansas City,* 236 Mo.App. 710, 160 S.W.2d 819 (1942) (city had no duty to warn motorists about curves in city streets); *Dohrman v. Lawrence County,* 82 S.D. 207, 143 N.W.2d 865 (1966) (failure to install adequate signs warning of danger incident to a sharp curve or steep hill not a violation of duty under state statute).

This settled law became somewhat unsettled as a result of *Bendas v. Township of White Deer,* 531 Pa. 180, 611 A.2d 1184 (1992), one of a number of cases that struggled with what the phrase in 42 Pa.C.S. § 8522(b)(4) "dangerous condition of ... highway" meant and whether to place the focus on "dangerous condition" or the word "of". In the seminal *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), our Supreme Court placed emphasis on the word "of" in the phrase, and held that the real estate exception could be applied only to those cases where it was alleged that the artificial condition or defect of the land *itself* caused the injury, not merely when it facilitated the injury. Only if the defect was "of" the Commonwealth real estate, e.g., a hole in the cement, could liability be imposed; if the emphasis was on the word "on" the Commonwealth real estate, e.g., grease on a sidewalk, then the defect did not fall within the exception to immunity. This "on-of" distinction was consistently followed until *Bendas.*

In *Bendas,* an accident occurred on a Commonwealth highway where no traffic control devices or signs existed as to speed limit or regulating entry on to the highway. Acting on the assumption that PennDot had a duty to erect signs, the Supreme Court, departing

---

*tion for allowance of appeal denied,* 525 Pa. 637, 578 A.2d 931 (1990).

**3.** *See McKee v. Michigan Department of Transportation,* 132 Mich.App. 714, 349 N.W.2d 798 (1984).

**4.** *See Warda v. State,* 45 Misc.2d 385, 256 N.Y.S.2d 1007 (1964); *Stapleton v. State,* 285 A.D. 984, 138 N.Y.S.2d 241 (1955).

**5.** *See Anderson v. Minneapolis,* 296 N.W.2d 383 (Minnesota 1980).

**6.** 42 Pa.C.S. § 8542(b)(4) provides an exception from immunity for local agencies for a dangerous condition of traffic signs, lights or other traffic controls already under the care, custody or control of the local agency, and no liability is imposed to erect signage.

from *Mascaro,* placed the focus on the words "dangerous condition." It went on to hold that whether the lack of signage was a dangerous condition of the Commonwealth's highway was a question of fact for a jury to determine as was the question of what constituted a dangerous condition. After *Bendas,* though, in *Finn v. City of Philadelphia,* 541 Pa. 596, 664 A.2d 1342 (1995), the Supreme Court reverted to utilizing the "on-of" distinction, stating that "liability depends, first, on the legal determination that an injury was caused by a condition of government realty itself, deriving, originating from, or having the realty as its source, and, only then, the factual determination that the condition was dangerous." *Id.,* 664 A.2d at 1346.

While our Supreme Court in *Bendas* sent to the jury the issue whether a lack of signage was a "dangerous condition", apparently because it was not raised, the opinion did not address the lack of a common law duty to erect traffic control signs on a Commonwealth highway to make it safe. Also, not discussed was 42 Pa.C.S. § 8522(a) which precludes imposition of liability when it cannot be imposed at common law.[7] Due to the uncertain validity of *Bendas,* because *Bendas* never addresses the issue of the need to establish a common law duty and because 42 Pa.C.S. § 8522(a) precludes imposition of liability when a duty did not exist at common law, the doctrine that there is no liability imposed for the failure to erect traffic signs is still valid.

Because the expert's report did not establish that State Route 350 was negligently designed and because PennDot owed no duty to Smith to place signage on the roadway, I dissent and would affirm the trial court.

DOYLE, J., joins in this dissenting opinion.

---

7. 42 Pa.C.S. § 8522(a) provides that sovereign immunity is waived as a bar to an action against Commonwealth parties for damages arising out of a negligent act where the damages would be recoverable under the common law.